Case 1:19-cv-02954-JMC   Document 22   Filed 06/09/20   Page 1 of 6

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MARYLAND**

CHAMBERS OF
J. Mark Coulson
UNITED STATES MAGISTRATE JUDGE

101 WEST LOMBARD STREET
BALTIMORE, MARYLAND 21201
(410) 962-7780
Fax (410) 962-1812

June 9, 2020

LETTER TO COUNSEL

    RE:    *Iva K. v. Social Security Administration*
            Civil No. 1:19-cv-02954-JMC

Dear Counsel:

        On October 9, 2019 Iva K ("Plaintiff") petitioned this Court to review the Social Security Administration's ("SSA") final decision to deny her claims for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB"). (ECF No. 1). I have considered the parties' cross-motions for Summary Judgment, and Plaintiff's reply. (ECF Nos. 17, 18, & 21). I find that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2019). This Court must uphold the decision of the SSA if it is supported by substantial evidence and if the SSA employed proper legal standards. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Shinaberry v. Saul*, 952 F.3d 113, 123 (4th Cir. 2020). Under that standard, I will DENY both motions, reverse the judgment of the SSA, and remand the case to the SSA for further analysis pursuant to sentence four of 42 U.S.C. § 405(g). This letter explains my rationale.

        Plaintiff protectively filed her claims for benefits on June 24, 2016, alleging an onset date of December 16, 2011. (Tr. 12). Her claims were denied initially, and again on reconsideration. (Tr. 88–91). A hearing was held on August 21, 2018, before Administrative Law Judge ("ALJ") Donna Edwards. (Tr. 12). Following the hearing, the ALJ determined that Plaintiff was not disabled within the meaning of the Social Security Act from December 16, 2011 through the date of last insured, December 31, 2016.[1] The Appeals Council declined review and consequently the ALJ's decision constitutes the final, reviewable decision of the SSA.

        In arriving at the decision to deny Plaintiff's claim, the ALJ followed the five-step sequential evaluation of disability set forth in the Secretary's regulations. 20 C.F.R. § 416.920. "To summarize, the ALJ asks at step one whether the claimant has been working; at step two, whether the claimant's medical impairments meet the regulations' severity and duration requirements; at step three, whether the medical impairments meet or equal an impairment listed in the regulations; at step four, whether the claimant can perform [his] past work given the limitations caused by [his] medical impairments; and at step five, whether the claimant can perform other work." *Mascio v. Colvin*, 780 F.3d 632, 634–35 (4th Cir. 2015). If the first three steps do not yield a conclusive determination, the ALJ then assesses the claimant's residual functional capacity ("RFC"), "which is 'the most' the claimant 'can still do despite' physical and mental limitations that affect [his] ability to work," by considering all of the claimant's medically determinable impairments regardless of severity. *Id.* at 635 (quoting 20 C.F.R. § 416.945(a)(1)). The claimant bears the burden of proof through the first four steps of the sequential evaluation. If he makes the requisite showing, the burden shifts to the Social Security Administration at step five to prove "that the claimant can perform other work that 'exists in significant numbers in the national economy,' considering the claimant's residual functional capacity, age, education, and work experience." *Lewis v. Berryhill*, 858 F.3d 858, 862 (4th Cir. 2017) (internal citations omitted).

---

[1] The ALJ noted that there was an additional issue as to "whether the insured status requirements of sections 216(i) and 223 of the Social Security Act are met." (Tr. 12). This is because Plaintiff's earnings record shows that she remained insured through December 31, 2016. Accordingly, the question before the ALJ was whether Plaintiff met the standards for disability at any point between December 16, 2011 and December 31, 2016. *Id.*

1

In this case, at step one, the ALJ found that Plaintiff did not engage in substantial gainful activity during the period from her alleged onset date of December 16, 2011 through her date last insured of December 31, 2016. (Tr. 14).

At step two, the ALJ determined that Plaintiff's major depressive disorder, panic disorder, obesity, status post right carpal tunnel syndrome repair, status post bilateral shoulder surgery, cervical radiculopathy and complex regional pain syndrome constitute severe impairments under the relevant regulations. (Tr. 14). At step three, the ALJ found that Plaintiff does did not have an impairment or combination of impairments that meet or medically equal the severity of any of the listed impairments set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 CFR §§ 404.1520(d), 404.1525 and 404.1526, 416.920(d), and 416.925 and 416.926). (Tr. 15).

Despite these impairments, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to:

> [P]erform light work as defined in 20 CFR § 404.1567(b) except the claimant can lift and carry 20 pounds occasionally and 10 pounds frequently with the left upper extremity and 10 pounds occasionally and less than 10 pounds frequently with the right upper extremity. The claimant can push and pull 20 pounds occasionally and 10 pounds frequently with the left upper extremity and 10 pounds occasionally and less than 10 pounds frequently with the right upper extremity. The claimant can sit for 6 hours out of an 8-hour workday, stand for 6 hours out of an 8-hour workday and walk for 6 hours out of an 8-hour workday. The claimant can use bilateral hand controls occasionally. The claimant can perform no overhead reaching bilaterally. The claimant can occasionally reach in all other directions bilaterally. The claimant can occasionally climb ramps and stairs, but can never climb ladders, ropes or scaffolds. The claimant can occasionally balance, stoop, kneel and crouch, but can never crawl. The claimant can understand, remember and carry out simple instructions. In addition to normal breaks, the claimant will be off task 10 percent of an 8-hour workday due to pain and symptoms associated with headaches and physical pain related to complex regional pain syndrome.

(Tr. 17–18).

At step four, the ALJ determined that Plaintiff has the past relevant work of a furniture sprayer/ lacquer sprayer II, DOT 741.687-018. (Tr. 21). After considering the testimony of a vocational expert ("VE"), the ALJ determined that Plaintiff could not perform any past relevant work. but could perform other jobs existing in significant numbers in the national economy. *Id.* Therefore, the ALJ concluded that Plaintiff was not disabled during the relevant time frame. (Tr. 23).

The Court reviews an ALJ's decision to ensure that the ALJ's findings are supported by substantial evidence and were reached through application of correct legal standards. *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," which "consists of more than a mere scintilla of evidence but may be less than a preponderance." *Id.* (internal citations and quotations omitted). In accordance with this standard, the Court does not "undertake to reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the ALJ." *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (internal citations and quotations omitted). Instead, "[w]here conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." *Id.*

On appeal, Plaintiff makes three primary arguments: (1) the ALJ's analysis of Plaintiff's limitations in concentration, persistence, or pace was flawed and runs afoul of the Fourth Circuit's decision in *Mascio*; (2) the ALJ erroneously found that Plaintiff could work full-time based on her daily activities; and (3) the ALJ erred in

finding that Plaintiff could perform the representative occupation identified at step five. (ECF No. 17 at 2–3). I agree that the ALJ's opinion did not comport with *Mascio*, and I therefore remand the case for further analysis.

*Moderate Impairment in Plaintiff's Ability to Maintain Concentration, Persistence, and Pace*

First, Plaintiff argues that the ALJ's RFC analysis of Plaintiff's limitations in concentration, persistence, or pace failed to comply with the requirements of *Mascio v. Colvin*, 780 F.3d 632, 638 (4th Cir. 2015).

In *Mascio*, the United States Court of Appeals for the Fourth Circuit determined that remand was appropriate for three distinct reasons, including, as pertinent to this case, the inadequacy of the ALJ's evaluation of "moderate difficulties" in concentration, persistence, or pace. *Id.* at 637–38. At step three of the sequential evaluation, the SSA determines whether a claimant's impairments meet or medically equal any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (2018). Listings 12.00 *et seq.* pertain to mental impairments. *Id.* at § 12.00 (2018). The relevant listings therein consist of: (1) "paragraph A criteria," which consist of a set of medical findings; (2) "paragraph B criteria," which consist of a set of impairment-related functional limitations; and (3) "paragraph C criteria," which relate to "serious and persistent" disorders lasting at least two years with a history of ongoing medical treatment and marginal adjustment. *Id.* § 12.00(A), (G). A claimant's impairments meet the listings relevant by satisfying either the paragraph A and paragraph B criteria, or the paragraph A and paragraph C criteria. *Id.* § 12.00(A).

Paragraph B consists of four broad functional areas including: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace, and (4) adapting or managing oneself. *Id.* § 12.00(A)(2)(b). The functional area of concentration, persistence, or pace "refers to the abilit[y] to focus attention on work activities and stay on task at a sustained rate." *Id.* § 12.00(E)(3).

The SSA employs the "special technique" to rate a claimant's degree of limitation in each functional area, based on the extent to which the claimant's impairment "interferes with [the claimant's] ability to function independently, appropriately, effectively, and on a sustained basis." 20 C.F.R. §§ 404.1520a(b), (c)(2), 416.920a(b), (c)(2) (2018). The SSA uses a five-point scale to rate a claimant's degree of limitation in the four areas: none, mild, moderate, marked, or extreme. *Id.* §§ 404.1520a(c)(4), 416.920a(c)(4). A moderate limitation signifies that the claimant has only a fair ability to function in the relevant area of mental functioning. 20 C.F.R. Pt. 404, Subpt. P, App'x 1 § 12.00(F)(2)(c) (2018). The functional area of "[c]oncentration, persistence, or pace refers to the ability to sustain focused attention and concentration sufficiently long to permit the timely and appropriate completion of tasks commonly found in work settings." *Id.* at § 12.00(C)(3).

The Fourth Circuit remanded *Mascio* because the hypothetical the ALJ posed to the VE—and the corresponding RFC assessment—did not include any mental limitations other than unskilled work, despite the fact that, at step three of the sequential evaluation, the ALJ determined that the claimant had moderate difficulties in maintaining concentration, persistence, or pace. *Mascio*, 780 F.3d at 637–38. The Fourth Circuit specifically held that it "agree[s] with other circuits that an ALJ does not account for a claimant's limitations in concentration, persistence, and pace by restricting the hypothetical question to simple, routine tasks or unskilled work." *Id.* at 638 (quoting *Winschel v. Comm'r, Soc. Sec.*, 631 F.3d 1176, 1180 (11th Cir. 2011)).

In so holding, the Fourth Circuit emphasized the distinction between the ability to perform simple tasks and the ability to stay on task, stating that "[o]nly the latter limitation would account for a claimant's limitation in concentration, persistence, or pace." *Id.* Although the Fourth Circuit noted that the ALJ's error might have been cured by an explanation as to why the claimant's moderate difficulties in concentration, persistence, or pace did not translate into a limitation in the claimant's RFC, it held that absent such an explanation, remand was necessary. *Id.* Simply put, the *Mascio* Court held that where an ALJ finds moderate difficulties at steps two or

3

three of the sequential evaluation, the ALJ is then required either to include the appropriate limitations that would account for such difficulties in the RFC or explain why no such limitations are necessary.

In this case, the ALJ assessed Plaintiff's mental impairments pursuant to the "special technique," and found that Plaintiff had moderate limitations in concentration, persistence, or pace. The ALJ's complete assessment reads:

> With regard to concentrating, persisting, or maintaining pace, the claimant had a moderate limitation. The medical evidence of record indicates a history of anxiety symptoms, including intermittent panic attacks with racing thoughts. However, metal status testing in November 2016 indicated a score of 5/5 on attention and calculation. Additionally, treatment records generally indicate that claimant's thought process is normal and her attention is focused. Accordingly, I find that claimant experiences no more than moderate limitations regarding her ability to concentrate, persist, or maintain pace. (Tr. 16–17) (internal citations omitted).

Plaintiff contends the ALJ here committed a similar error to that in *Mascio* because she determined that Plaintiff has moderate limitations in concentration, persistence, or pace, but subsequently failed to incorporate an appropriate limitation in the RFC assessment or, in the alternative, to indicate why her moderate limitations did not translate into a limitation in the RFC assessment. The Commissioner maintains that the ALJ's decision explains why she did not find greater mental limitations. (ECF No. 18-1 at 6). Specifically, the Commissioner notes that the ALJ acknowledged Plaintiff's medical records (showing a history of anxiety symptoms, including intermittent panic attacks and racing thoughts). *Id.* "The ALJ noted, however, that mental status testing showed a score of 5/5 in attention and calculation, and treatment records generally indicated focused attention and normal thought processes." Further, a mini status examination was in normal range, and the treatment records continued to indicate good attention and concentration and normal thought processes. *Id.* The Commissioner also emphasized that the ALJ "noted that [Plaintiff] reported being able to care for her pets, go to the store several times a week, and do chores such as laundry and yard work. In fact, [Plaintiff] reported that she could pay attention for 'as long as needed.'" *Id.* (citing Tr. 228).

Fundamentally, the "issue in this case is not whether the record contains evidence that might support the ALJ's conclusion; it is whether the ALJ explained the apparent discrepancy between her step three finding and her RFC assessment." *Talmo v. Comm'r, Soc. Sec.*, 2015 WL 2395108, *3 (D. Md. May 19, 2015), *report and recommendation adopted* (June 5, 2015). This is because pursuant to *Mascio*, once the ALJ made a step three finding that a claimant suffers from moderate difficulties in concentration, persistence, or pace, the ALJ must either include a corresponding limitation in the RFC assessment, or explain why no such limitation is necessary. See *Capps v. Berryhill*, 2018 WL 4616018, *6 (D. Md. Sept. 26, 2018). In this case, the ALJ did neither, and failed to build an "accurate and logical bridge from [that] evidence to her conclusion." See *Travis X.C. v. Saul*, 2019 WL 4597897, *4 (D. Md. Sept. 20, 2019). Considering this inadequacy, I must remand the case to the SSA for further analysis consistent with the Fourth Circuit's mandate in *Mascio*. In doing so, I express no opinion as to whether the ALJ's ultimate decision that Plaintiff was not disabled was correct or incorrect.

### *Plaintiff's Ability to Remain on Task*

Second, Plaintiff argues that the ALJ failed to consider her limited ability to sustain-work related functions for a full day, despite Plaintiff's ability to do some "activities of daily living." (ECF No. 17 at 3). In determining Plaintiff's RFC, the ALJ stated that in addition to "normal breaks the claimant will be off task 10 percent of an 8-hour workday due to pain and symptoms associated with headaches and physical pain related to complex regional pain syndrome." (Tr. 17–18). This aspect of the RFC fails for the reasons outlined above: the ALJ failed to explain how despite Plaintiff's moderate difficulties in maintaining concentration, persistence or pace, she could remain on task for at least 90% of an eight-hour workday. See *Williams v. Berryhill*, Civil No. TMD 17-1083, 2018 WL 3092273, at *6 (D. Md. June 22, 2018). *See also Sheila K v. Comm'r, Soc. Sec.*, No. SAG-17-

4

cv-01252, 2018 WL 2739961, at *1 (D. Md. May 14, 2018) (assigning a precise percentage of time off-task constituted a critical part of the disability determination); *Petry v. Comm'r, Soc. Sec.*, No. SAG-16-cv-464, 2017 WL 680379, *2 (D. Md. Feb. 21, 2017) (requiring specific explanation as to how the ALJ's percentage was calculated, as one percent increase could preclude competitive employment). Given the VE's testimony, rendering the percentage of time off-task to be work-preclusive (Tr. 60), the ALJ failed to fulfill her duty of explanation on this issue, and therefore remand is warranted on this basis, as well.

*Conflict Between VE Testimony and DOT*

Third, Plaintiff argues the ALJ failed to resolve an apparent conflict between the VE's testimony and the Dictionary of Occupational Titles ("DOT").[2] The VE testified that Plaintiff could perform one job, a furniture-rental clerk, DOT code 295.357-018. (Tr. 59).[3] The DOT classifies this position as "light work," which involves "lifting of no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 404.1567(b). This position also requires occasional reaching, and a Reasoning of Level 3. DOT § 295.357-018, 1991 WL 672589. Plaintiff contends that the limitations in her RFC pertaining to lifting, reaching, and simple routine tasks, make this position inappropriate. (ECF No. 17 at 3).

The ALJ has a duty, independent of the VE, to identify any "apparent conflicts" between the VE's testimony and the DOT and to resolve any such conflicts. *Carroll v. Comm'r, Soc. Sec.*, 2017 WL 1532547, *2 (D. Md. Apr. 17, 2017) (citing *Pearson*, 810 F.3d at 208–10). The Court of Appeals for the Fourth Circuit has noted that the ALJ's duty to identify conflicts with the DOT extends beyond simply asking the VE whether his testimony is consistent with the DOT. *Id.* Rather, the Fourth Circuit "clarified that 'the *ALJ* (not the [VE])' is required to '[i]dentify and obtain a reasonable explanation' for conflicts between the [VE's] testimony and the [DOT][.]" *Id.* (quoting *Pearson*, 810 F.3d at 208) (internal citations omitted). The Fourth Circuit limited the ALJ's duty to identifying "apparent" conflicts, which it held to mean "that the ALJ must identify where the expert's testimony seems to, but does not necessarily, conflict with the DOT. *Id.*

Here, the single job identified, a furniture rental clerk, requires a Reasoning of Level 3. Reasoning Level 3 requires the ability to "[a]pply commonsense understanding to carry out instructions furnished in written, oral or diagrammatic form" and "[d]eal with problems involving a few concrete variables from standardized instructions." See *Keller v. Berryhill*, 754 Fed. App'x 193, 197 (4th Cir. 2018) (quoting DOT, App. C, 1991 WL 688702). By comparison, Plaintiff's RFC, appears, to limit her to jobs that involve carrying out simple instructions. (Tr. 17) ("Plaintiff can understand, remember, and carry out simple instructions."). The Court agrees with Plaintiff that a limitation to carrying out simple instructions appears inconsistent with this job, which requires a Reasoning Development level of 3. *Keller*, 754 Fed. App'x at 198 ("[A]n apparent conflict exists between a limitation to short and simple instructions and Reasoning Development Level 3 occupations."). Accordingly, the ALJ erred by failing to identify and resolve this apparent conflict between the VE's testimony that Plaintiff could perform this occupation, and the DOT's reasoning development requirement for this occupation.[4] This conclusion

---

[2] *Guiton v. Colvin*, 546 Fed. App'x 137, 140 n.5 (4th Cir. 2013) ("The DOT is a reference published by the U.S. Department of Labor that lists and describes various jobs. Its use in the disability review process is authorized by regulation."). Notably, Plaintiff also relies on the O*Net to show that there is an apparent conflict. See (ECF No. 17-4). Courts, however, have repeatedly "rejected claims that an ALJ must resolve any apparent conflicts between VE testimony and publications other than the DOT." *Gaston v. Berryhill*, 2018 WL 3873593, *3 (W.D.N.C. Aug. 15, 2018). Therefore, Plaintiff may not rely upon the O*Net to establish an apparent conflict.

[3] In the ALJ's decision, she cites DOT #295.357-010. (Tr. 22). The DOT code provided by the VE, however, was 295.357-018. (Tr. 57). As the ALJ outlined the requirements for a furniture rental clerk and based her determination on the "testimony of the vocational expert," it would seem that this was merely a typographical error. *Id.*

[4] *See Radford v. Saul*, 2019 WL 3729565, *5 (W.D.N.C. Aug. 7, 2019) ("The Court finds that a meaningful difference exists between a limitation to *perform* only simple routine, repetitive tasks—Plaintiff's RFC limitation here—and a limitation to receive and follow short, simple instructions—the RFC limitation in *Thomas*. The first limitation accounts for a claimant's ability to perform certain job tasks

"does not mean that an actual conflict exists between a simple instructions limitation and occupations requiring a Reasoning Development Level 3. Nor have we determined that [Plaintiff] is unable to actually perform the identified occupation[]. We decide only that an apparent conflict exists between the VE's testimony and the DOT, and that the ALJ was obligated to resolve that apparent conflict with the VE's help. Because the ALJ failed to do so, however, the VE's testimony alone 'cannot provide substantial evidence' supporting the ALJ's fifth-step finding." *Id.* (quoting *Pearson*, 810 F.3d at 209–11).

As the Court is remanding this case for further administrative proceedings, the ALJ will also have the opportunity to consider whether the lifting and reaching requirements of a furniture-rental clerk are inconsistent with Plaintiff's RFC. *See Caroll*, 2017 WL 1532547, at *2 (remanding pursuant to *Pearson* as the ALJ failed to identify and resolve an apparent conflict between the vocational expert's testimony that the claimant, who was limited to no overhead work, could perform various occupations with a DOT requirement of frequent reaching).

For the reasons set forth herein, Plaintiff's Motion for Summary Judgment (ECF No. 17), is DENIED and Defendant's Motion for Summary Judgment (ECF No. 18) is DENIED. Pursuant to sentence four of 42 U.S.C. § 405(g), the SSA's judgment is REVERSED IN PART due to inadequate analysis. The case is REMANDED for further proceedings in accordance with this opinion. The Clerk is directed to CLOSE this case. Despite the informal nature of this letter, it should be flagged as an opinion. A separate Order will issue.

Sincerely yours,

   /s/

J. Mark Coulson
United States Magistrate Judge

---

while the second limitation accounts for a claimant's ability to comprehend tasks, and therefore, *Thomas* is distinguishable from the case at bar.").

6